**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                        )
**DEBORAH PEREZ,**                       )
                                        )
      **Plaintiff,**                )
                                        )
                                        )    **Civil No.**
    **v.**                             )    **13-11066-FDS**
                                        )
**GREATER NEW BEDFORD**                  )
**VOCATIONAL TECHNICAL SCHOOL**          )
**DISTRICT,**                            )
                                        )
      **Defendant.**                )
                                        )
_____)

**MEMORANDUM AND ORDER ON DEFENDANT'S**
**MOTION TO DISMISS COUNTS 4, 6, AND 7 OF THE COMPLAINT**

**SAYLOR, J.**

      This is an action for alleged retaliatory termination and age discrimination.  Plaintiff

Deborah Perez worked as a special-education coordinator for defendant Greater New Bedford

Vocational Technical School District.  She contends that she was fired in retaliation for her work

on behalf of students with disabilities and because of her age.  Her complaint contains eight

counts, alleging (1) violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794;

(2) violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA"); (3)

illegal retaliation under the Massachusetts Anti-Discrimination Act ("MADA"), Mass. Gen.

Laws ch. 151B; (4) illegal discrimination under MADA for association with a protected class;

(5) illegal discrimination under MADA on account of age; (6) illegal termination for reporting

violations of law; (7) wrongful termination in violation of public policy; and (8) breach of

contract.

      Defendant has filed a motion to dismiss counts 4, 6, and 7.  For the following reasons,

that motion will be granted.

## I.      <u>Background</u>

The facts are summarized below as set forth in the complaint.

Plaintiff Deborah Perez is a resident of Medford, Massachusetts.  She is a mother of two special-needs students.  She has a master's degree in special education and a Certificate of Advanced Graduate Study in Educational Leadership, and has more than 20 years of experience working with and advocating on behalf of students with disabilities.

Defendant Greater New Bedford Vocational Technical School District is a regional school district.  It operates the largest four-year public vocational high school in Massachusetts. The District receives funding from several government sources, including funds from the federal Individuals with Disabilities Education Act, 20 U.S.C. § 1401 ("IDEA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, and the Commonwealth of Massachusetts.

In July 2008, the District hired Perez as the director of special education at the school for the 2008-2009 academic year.  According to the complaint, when Perez started her employment, she found the school to be out of compliance with many state and federal statutes, regulations, and policies concerning special-needs students.  For example, she contends that the school had no organized program to assist disabled students to transition from the school environment into independent, post-secondary adult living, did not provide assistive technology devices to improve learning opportunities for its disabled students, and did not meet the particular needs of students with autism spectrum disorders.  She also contends that the school had bought equipment and materials for use by the general student body with funds intended for the purchase of assistive technology devices for disabled students.

According to the complaint, Perez began to address these issues.  She recruited providers of services to the disabled community to create meaningful "transition to adulthood programs" for students, arranged for the acquisition of assistive technology for disabled students, and provided specialists for school-wide professional development opportunities for teachers and other school staff working with children with autism-spectrum disorders.  She also obtained a federal grant of $300,000 to design and create a learning center and programs for delivery of services to the school's disabled students.

Perez contends that she did so despite problems with support from the District.  According to her, the District failed to appoint chairs for teams developing individualized education programs for disabled students, did not respond meaningfully to her proposals to correct a thirty-point difference between mainstream and special needs students on standardized mathematics tests, assigned staff to work with disabled students randomly instead of based on their individual skills.  She also contends that the District also failed to provide her with periodic feedback, mentor support, and administrative assistant support.

According to the complaint, her evaluation for the 2008-2009 academic year was overwhelmingly negative, but the concerns expressed in the review had not been brought to her attention earlier in the year.  Part of that review included the goal of creating a separate curriculum for special-education students, even though she believed that federal and state law requires those students instead to be taught the approved general-education curriculum with instructional and programmatic accommodations.  She alleges that the review included as many as fourteen new goals that fundamentally changed the nature of her job.

The District rehired Perez for the 2009-2010 academic year.  That fall, the District

brought in an outside consultant to evaluate the special-education department.  According to the complaint, the consultant's final report stated the department was on the right track and that Perez had done an outstanding job overseeing the development of the new learning center.

In December 2009, the District asked Perez to amend a grant request that she had made under IDEA so that it would permit the hiring of an information-technology technician to assist school-wide computer needs, rather than one trained in instruction with adaptive technology for disabled students.  She contends that she refused to amend the grant because IDEA requires schools spend its funds on special-education students.  In response, she contends, the District amended the grant itself and faulted Perez for being uncooperative.

In February 2010, the District's superintendent delivered a prepared statement to Perez that the principal of the school did not intend to renew her contract for the subsequent school year.  In May 2010, the District notified her that its superintendent intended to dismiss her.  She was placed on administrative leave through the end of the school year and was not hired for the following year.  She presented her objections to the superintendent, but he declined to reverse the decision.

Perez contends that she was replaced by an uncertified person more than five years younger who did not have the same record of achievement in advocacy for students with special needs.  Perez filed a complaint with the Massachusetts Commission Against Discrimination, alleging discrimination based on age and association with people with disabilities.  She filed this case on April 30, 2013.

II.    **Standard of Review**

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court "must assume the

truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

## III.    Analysis

On July 1, 2013, defendant filed a motion to dismiss the anti-discrimination claim for relationship with persons in a protected class (Count 4), the whistleblower claim (Count 6), and the public policy claim (Count 7).

### A.    Illegal Discrimination for Association with a Protected Class

Mass. Gen. Laws ch. 151B § 4(16) prohibits employers from discrimination against otherwise qualified employees because they are handicapped.  Ordinarily, a plaintiff must be handicapped to sue under the statute.  *City of New Bedford v. Massachusetts Comm'n Against Discrimination*, 440 Mass. 450, 461-62 (2003).  Plaintiff, however, is not handicapped.  Instead, she contends that she was not rehired by defendant because of her association with and advocacy

on behalf of disabled students at the school.  Defendant contends that Mass. Gen. Laws ch. 151B § 4(16) does not cover discrimination for relationships with disabled persons, citing *Ayanna v. Dechert LLP*, 840 F. Supp. 2d 453 (D. Mass. 2012).

### 1.     Status of Associational Discrimination Claims in Massachusetts

Plaintiff's claim is one of alleged "associational discrimination."  "The term 'associational discrimination' refers to a claim that a plaintiff, although not a member of a protected class himself or herself, is the victim of discriminatory animus directed toward a third person who *is* a member of the protected class and with whom the plaintiff associates."  *Flagg v. AliMed, Inc.*, 466 Mass. 23, 27 (2013) (emphasis in original).  In *Ayanna*, the court held that associational discrimination did not violate the plain text of §4(16) because the statute was silent on such discrimination.  840 F. Supp. 2d at 457.

However, "[w]hen interpreting state law, a federal court employs the method and approach announced by the state's highest court."  *Cahoon v. Shelton*, 647 F.3d 18, 22 (1st Cir. 2011).  On July 19, 2013, the Massachusetts Supreme Judicial Court held that "associational discrimination based on handicap is prohibited under § 4(16)."  *Flagg*, 466 Mass. at 37.  The *Flagg* court reversed the dismissal of an associational discrimination claim where the complaint alleged that the plaintiff was a qualified employee terminated because of his association with his handicapped wife.  *Id.*  The SJC specifically disagreed with the court's opinion in *Ayanna*.  *Id.* at 37 n.27.  It is therefore clear that Massachusetts law allows claims for associational discrimination.  The question then becomes whether this claim may be brought under the holding or reasoning of *Flagg*.

6

2.      **Application of *Flagg***

In *Flagg*, the SJC noted, "We limit our analysis of associational claims to the immediate family context raised by this case; we have no occasion here to examine more attenuated associations." *Flagg*, 466 Mass. at 30 n.15.  Defendant argues that *Flagg*'s reasoning does not extend to the situation in this case, where a plaintiff is claiming discrimination because of her association with and advocacy for disabled students.

Cases involving associational discrimination have generally involved a familial relationship between the plaintiff and handicapped individual.  *See, e.g.*, *Flagg*, 466 Mass. at 30; *Thompson v. North Am. Stainless, LP*, 131 S. Ct. 863, 868 (2011).[1]  Whether plaintiff here can pursue her claims of associational discrimination depends on whether the reasoning of *Flagg* would permit such a claim based on advocacy, not familial status.

The SJC found that §4(16) encompassed claims of associational discrimination for several reasons.  First, the court noted that the statute's anti-discrimination provisions could "only be understood as establishing an expansive, categorical prohibition against discrimination based on handicap in the workplace generally." 466 Mass. at 30.  When an otherwise satisfactory employee is subject to adverse employment decisions based on hostility towards the handicapped condition of the employee's spouse, the court reasoned, the employer is treating the employee "as if he were handicapped himself."  *Id.*  Thus, the employee is "subjected to the type

---

[1] Plaintiff contends that absent *Flagg*, she would ask for certification of a question of state law to the SJC. Federal courts can certify questions to the SJC in cases where there is no controlling precedent and where the questions may be determinative of the pending cause of action.  *In re Engage, Inc.*, 544 F.3d 50, 52 (1st Cir. 2008). That fact that a legal issue is close or difficult, however, is not normally enough to warrant certification.  *Id.* at 57. Additionally, certification is inappropriate where state law is sufficiently clear to allow prediction of its course.  *Id.* at 53.  Because there is no motion to certify any question of state law to the SJC, the Court will not do so at this time.

of 'prejudice, stereotypes, or unfounded fear' relating to handicapped individuals that c. 151B, §

4(16) seeks to protect against."  *Id.* (quoting *Cox v. New England Tel. & Tel. Co.*, 414 Mass.

375, 383-84 (1993)).  The SJC concluded that "the concept of associational discrimination also

furthers the more general purposes of c. 151B as a wide-ranging law, 'seeking removal of

artificial, arbitrary, and unnecessary barriers to full participation in the workplace' that are based

on discrimination."  *Id.* (quoting *College-Town, Div. of Interco, Inc. v. Massachusetts Comm'n*

*Against Discrimination*, 400 Mass. 156, 162 (1987)) (internal alterations omitted).

Second, the SJC found that the statutory definition of "handicapped" supported that

conclusion.  The statute defines as handicapped any person who has:  "(a) a physical or mental

impairment which substantially limits one or more major life activities of a person; (b) a record

of having such impairment; or (c) *being regarded as having such impairment*."  *Flagg*, 466

Mass. at 31 (quoting Mass. Gen. Laws ch. 151B § 1(17)) (emphasis in original).  Because firing

an employee for an association with a handicapped person treated the employee as a

handicapped person, the SJC found associational discrimination covered by the statute.  *Id.* at

31-32.

Finally, the SJC reviewed the MCAD's interpretation of the statute, and then reviewed

analogous federal anti-discrimination statutes.  The SJC found that those authorities agreed that

associational discrimination was actionable.  *Id.* at 32-37.

Based on the SJC's reasoning in *Flagg*, §4(16) does not cover the claimed associational

discrimination alleged here.  Plaintiff alleges she was fired because she advocated for the

interests of disabled children in her role as special-education coordinator.  There are no

allegations, however, that she was subject to the same prejudice, stereotypes, or unfounded fear

that accompanies discrimination against the handicapped.  Unlike the husband in *Flagg*, there are no allegations that plaintiff was not rehired because she was regarded as having a mental or physical impairment by proxy.  And plaintiff has not alleged that her association with any specific disabled child resulted in adverse employment actions.

Review of analogous federal statutes supports that conclusion.  The ADA includes an associational discrimination provision.  42 U.S.C. § 12112(b)(4).  Under the ADA, adverse employment consequences for advocacy on behalf of those with disabilities may implicate the retaliation provisions of the statute, but not the associational-discrimination portions.  *Oliveras-Sifre v. Puerto Rico Dept. of Health*, 214 F.3d 23, 26 (1st Cir. 2000).  If a plaintiff does not "allege a specific association with a disabled individual," an associational discrimination claim cannot be sustained.  *Id.*

This case is similar to *Sifre v. Department of Health*, 38 F. Supp. 2d 91, 100 (D.P.R. 1999), *aff'd, Oliveras-Sifre v. Puerto Rico Dep't of Health*, 214 F.3d 23 (1st Cir. 2000).  In that case, the plaintiffs claimed they were fired because of their advocacy on behalf of HIV/AIDS patients as part of their jobs at the Department of Health.  38 F. Supp. 2d at 101.  They did not claim they were dismissed because of their employer's beliefs regarding HIV/AIDS patients with whom they were associated.  *Id.*  The First Circuit affirmed dismissal of the claim because the plaintiffs did not allege a specific association with a disabled individual.  *Oliveras-Sifre*, 214 F.3d at 26.  Likewise, plaintiff here contends that she was not rehired because of her advocacy on behalf of disabled students as part of her job for defendant.  She does not claim she was dismissed because of defendant's beliefs regarding any disabled students with whom she was associated.

The Court also notes that allowing plaintiff's claim to proceed would greatly extend the reach of anti-discrimination statutes.  *See Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002) (noting that allowing ADA associational-discrimination claims based on "generalized references to association with disabled persons or to advocacy for a group of disabled persons" would "arm every hospital employee with a potential ADA complaint" because "[e]very hospital employee can allege at least a loose association with disabled patients").  Indeed, any person working with any handicapped person in any capacity would have a potential §4(16) claim.  Employers might well find it difficult to terminate individuals over legitimate disagreements about policy toward the handicapped.  If such a sweeping change is desirable—which is certainly open to debate—it should come from the legislature, not the courts.

The Court accordingly holds that the kind of associational discrimination claim brought by plaintiff does not fall within the range of cases permitted under *Flagg*.  Put simply, such advocacy on behalf of disabled students is not enough to sustain a violation of §4(16).[2] Accordingly, Count 4 will be dismissed for failure to state a claim.

### B.      Illegal Retaliatory Termination for Whistleblowing

Defendant has also moved to dismiss Count 6, which alleges retaliatory termination under Mass. Gen. Laws ch. 149 § 185(b), the Massachusetts whistleblower statute.  That statute forbids Massachusetts agencies and instrumentalities from retaliating against employees who disclose to a public body any activity or practices in violation of law that the employee

---

[2] The Massachusetts Commission Against Discrimination's interpretation of the statute is not to the contrary.  Every vindication of associational discrimination claims by the Commission cited by the *Flagg* court and plaintiff in this case involve a plaintiff's association with a specific handicapped person.  *Flagg*, 466 Mass. at 33 n.21  (collecting cases).

reasonably believes poses a risk to public health or safety.

Defendant contends plaintiff's claim is barred by the statute of limitations. The limitations period for a claim of retaliation under the whistleblower statute is two years. Mass. Gen. Laws ch. 149, § 185(d). "The statutory period for complaining of a discriminatory termination does not begin to run until the employee has sufficient notice of that specific act." *Wheatley v. American Tel. & Tel. Co*., 418 Mass. 394, 398 (1994) (quoting *McConnell v. General Tel. Co. of Cal.*, 814 F.2d 1311, 1317 (9th Cir. 1987)). Plaintiff filed this suit on April 30, 2013. Plaintiff alleges she knew that she had been terminated at the end of the 2009-2010 school year. Making all inferences in favor of plaintiff, any retaliatory action by defendant happened in 2010, outside the applicable limitations period. Accordingly, Count 6 will be dismissed for failure to state a claim.[3]

## V.   Wrongful Termination in Violation of Public Policy

Count 7 alleges a claim for wrongful termination in violation of public policy under Massachusetts common law. "Redress is available for employees who are terminated for asserting a legally guaranteed right (e.g., filing workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury)." *Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch.*, 404 Mass. 145, 149-50 (1989). For example, "a cause of action will lie when an employee is fired . . . for enforcing safety regulations for which she was responsible." *Flesner v. Technical Communications Corp.*, 410 Mass. 805, 810 (1991) (citing *Hobson v. McLean Hosp. Corp.*, 402

---

[3] Defendant also contends that the whistleblower statute's exclusivity provision, in conjunction with the exclusivity provision of plaintiff's anti-discrimination claims, forces plaintiff to choose one set of claims to prosecute. *See* Mass. Gen. Laws ch. 149 § 185(f); ch. 151B § 9. Because the Court will dismiss the whistleblower claims based on the statute of limitations, it does not decide the effect of the dueling exclusivity provisions.

Mass. 413, 416-17 (1980)).  Plaintiff contends she is entitled to redress because she was fired for objecting to defendant's refusal to comply with applicable special education laws for which she was responsible.

The cause of action for wrongful termination in violation of public policy does not apply where "there is a comprehensive remedial statute, [and] the creation of a new common law action based on the public policy expressed in that statute would interfere with that remedial scheme." *Melley v. Gillette Corp.*, 19 Mass. App. Ct. 511, 513 (1985), *aff'd,* 397 Mass. 1004 (1986).  It makes no difference whether the remedial scheme is created by state or federal law. *See Valerio v. Putnam Associates Inc.*, 173 F.3d 35, 46 (1st Cir. 1999) (applying *Melley* and dismissing common-law claim for retaliation duplicative of plaintiff's FLSA retaliation claim).

Plaintiff's claim for wrongful termination based on violation of public policy is duplicative of her other claims of retaliation based on protected conduct under federal law and her Massachusetts whistleblower statute claim.[4]  Those laws create complex remedial schemes intended to enforce the public policies they embody.  Because creation of a common-law cause of action would interfere with those schemes, the Court will not now create one.  Count 7 will therefore be dismissed.

**VI.**     <u>**Conclusion**</u>

For the foregoing reasons, defendant's motion is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV

Dated: November 13, 2013          United States District Judge

---

[4] Although the whistleblower claim is dismissed based on the statute of limitations, the Court cannot create a separate common-law remedy under Massachusetts law merely because plaintiff failed to timely prosecute that claim.